107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Johnny Orlando GRAHAM, et al., Plaintiffs-Appellants,
McCallie School, Plaintiff-Appellee,
v.
TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION, Defendant-Appellee.
 Nos. 95-5270, 95-6511.
 United States Court of Appeals, Sixth Circuit.
 Feb. 21, 1997.
 
 Before: NELSON and BATCHELDER, Circuit Judges; and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 Private secondary school athletes challenging a rule limiting the number of varsity athletes receiving financial assistance appeal the denial of preliminary injunctive relief and the district court's grant of summary judgment to defendant. For the reasons that follow, we DISMISS this consolidated appeal.
 
 I.
 
 2
 Plaintiffs, five student athletes at the McCallie School, a private secondary school in Chattanooga, Tennessee, filed this action challenging a provision of the Tennessee Secondary School Athletic Association ("TSSAA") Bylaws containing a financial aid rule limiting the number of varsity athletes receiving financial assistance, the so-called "Quota Rule."[1] TSSAA is a not-for-profit corporation regulating athletic activities at member schools in Tennessee, including McCallie School.
 
 
 3
 During the 1994-1995 school year, McCallie did not adhere to the "Quota Rule." As a consequence, McCallie's athletic teams were prohibited from post-season interscholastic athletic competitions. Plaintiffs filed suit in the Hamilton County, Tennessee Circuit Court on the eve of the state basketball and wrestling tournaments and sought a temporary restraining order enjoining TSSAA from excluding McCallie from the tournaments. The state court granted the requested relief. TSSAA then postponed the tournaments and removed the case. Plaintiffs filed a motion to remand. The district court denied the motion to remand and scheduled a hearing on the motion for preliminary injunction. The hearing lasted two full days. Finding that Richards lacked standing because he was not entered or certified to participate in the state wrestling tournament, and that Hagaman and Lindsey, who are Caucasian, lacked standing to assert racial discrimination claims, the district court then reached the merits of the remaining claims. Concluding that plaintiffs were unlikely to succeed on the merits of their 42 U.S.C. § 1983, Title VI[2] and Tennessee Human Rights Act[3] claims, the court denied the preliminary injunction and dissolved the state court temporary restraining order.
 
 
 4
 Plaintiffs then appealed the denial of preliminary injunctive relief and filed a motion for an emergency injunction pending appeal. The emergency motion was denied. In June of 1995, defendant moved to dismiss, contending that the conclusion of the 1994-1995 school year rendered the appeal moot. Defendant's motion was denied on the basis that the relief sought by plaintiffs extended beyond the 1994-1995 school year.
 
 
 5
 The district court granted defendant's motion for summary judgment on October 11, 1995. In its ruling, the court found that the claims of plaintiffs Graham, Hagaman and Lindsey were moot because they had already graduated from the McCallie School, and that the remaining plaintiffs,[4] Westfield and Richards, lacked standing as a result of the sanctions imposed on McCallie School for violation of the Quota Rule and TSSAA's Constitution.[5] In addition, the court noted that even assuming that plaintiffs Westfield and Richards had standing, their claims would fail on their merits.
 
 
 6
 Plaintiffs Westfield and Richards timely appealed from the order of summary judgment entered on November 11, 1995. Defendant then filed a second motion to dismiss the appeal of the denial of the motion for preliminary injunction, claiming that the trial court's grant of summary judgment rendered the denial of preliminary injunctive relief moot. Plaintiffs disagreed and requested that the appeals be consolidated. A panel of this Court denied defendant's motion to dismiss the appeal as moot, finding the issue of mootness intertwined with the merits of plaintiffs' appeal from the final judgment, and consolidated Case Nos. 95-5260 and 95-6511.
 
 II.
 
 7
 Before addressing the merits of petitioners' appeal, we must first determine whether petitioners' appeal presents a justiciable case. United States v. Van, 931 F.2d 384 (6th Cir.1991). Article III of the United States Constitution limits the "judicial power" to resolution of "cases" and "controversies." Briggs v. Ohio Elections Comm'n, 61 F.3d 487, 491 (6th Cir.1995) (quoting Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 471 (1982)). Article III mandates that we adjudicate only actual, on-going controversies. Honig v. Doe, 484 U.S. 305, 317 (1988).
 
 
 8
 Four of the five named plaintiffs, Graham, Hagaman, Lindsey and Westfield, have graduated from the McCallie School.[6] The controversy between these four named plaintiffs and the TSSAA over the "Quota Rule" is thus moot. Sandison v. Michigan High School Athletic Ass'n, Inc., 64 F.3d 1026, 1029-30 (6th Cir.1995); see also Bd. of School Comm'rs of City of Indianapolis v. Jacobs, 420 U.S. 128, 130 (1975) (where all named plaintiffs had graduated and the case was not certified as a class action, appeal was moot). The "capable of repetition yet evading review" exception to the mootness doctrine does not apply to these four plaintiffs "because the exception requires not only that 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration,' but also that 'there was reasonable expectation that the same complaining party would be subject to the same action again.' " Sandison, 64 F.3d at 1030 (quoting Murphy v. Hunt, 455 U.S. 478, 482 (per curiam)). The graduation of Graham, Hagaman, Lindsey and Westfield precludes repetition of another controversy between them and TSSAA over the "Quota Rule."
 
 III.
 
 9
 We next consider whether petitioner Richards' appeal, while not moot, presents an Article III case or controversy. Standing is an essential element of Article III's case or controversy requirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing is comprised of three elements: (1) "injury in fact;" (2) a causal relationship between the conduct complained of and the injury; and (3) a strong likelihood that the injury could be redressed by judicial action. Id. at 560-61.
 
 
 10
 To meet the injury in fact requirement, Richards "must show that he has sustained or is immediately in danger of sustaining some direct injury" as a result of the Quota Rule "and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); see also Kelley v. Selin, 42 F.3d 1501, 1508 (6th Cir.1995) (injury must be distinct and palpable, hypothetical or imagined detriment not sufficient). While Richards' alleged injury is that the Quota Rule prohibits him from participating in post-season athletic competition, he has not yet suffered any such injury. During the 1994-1995 school season, Richards, then a freshman, was not entered in the state wrestling tournament. Because of the TSSAA sanctions, McCallie School's entire wrestling program was prohibited from participation in athletic competition during the 1995-1996 school year when Richards was a sophomore.
 
 
 11
 Because Richards cannot establish that he has suffered an injury resulting from application of the Quota Rule, he must show that he is "immediately in danger of sustaining some direct injury." Lyons, 461 U.S. at 102. This he cannot do. Assuming Richards has remained at McCallie for his junior year in 1996-1997, the Quota Rule will not operate to exclude him from the state tournament because he will not be eligible for the tournament; the TSSAA sanctions[7] prohibit the wrestling team from participating in post-season tournaments during the 1996-1997 school year. The state tournament of the 1997-1998 school year is the first one during which Richards might suffer an injury--if he is still at McCallie School, if he is still wrestling, if the wrestling program survives its probationary period with the TSSAA such that McCallie wrestlers are eligible to participate in post-season competition, and if he performs well enough to qualify for the competition. This "injury" will not occur until more than a year from now and is predicated on multiple conditions precedent. Thus, Richards fails to establish an "injury in fact" because he cannot show that the threat of injury to him resulting from the Quota Rule is both real and immediate.[8] We therefore conclude that Richards has no standing to contest the district court's denial of preliminary injunctive relief and final judgment.
 
 
 12
 Since Richards lacks standing to appeal the merits of the case, he is also unable to contest the dismissal of McCallie.[9] Given this disposition, we need not address the remaining arguments.
 
 IV.
 
 13
 Accordingly, we DISMISS as moot the appeals of Graham, Hagaman, Lindsey and Westfield; and we DISMISS Richards' appeal for lack of standing.
 
 
 
 *
 The Honorable David W. McKeague, District Judge, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Article II, Section 27, of the TSSAA Bylaws sets forth the conditions under which financial aid is allowed, limiting the number of athletes in each sport and each category who may receive aid. The bylaws also provide that "any school that desires to exceed the financial aid number in any sport may do so but the school will not be permitted to enter the tournament series in the sport in which they exceed the number." Article II, Section 27, p 5 of the TSSAA Bylaws. The bylaws further provide that "[A]ny school that desires to exceed the total financial aid number for major sports [defined elsewhere as football, basketball, baseball, softball and track] ... may do so but the school would not be permitted to enter the tournament series in all major sports." Id. at p 6
 
 
 [2]
 Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d-s 2000d-7
 
 
 [3]
 Tenn.Code Ann. §§ 4-21-101 to -903
 
 
 [4]
 Johnathan Westfield was a senior and Leron Gerod Richards, a sophomore at McCallie during the 1995-1996 academic year
 
 
 [5]
 Subsequent to the trial court's ruling on the motion for preliminary injunction, McCallie was found to have been in violation of the Quota Rule during the 1993-1994 school year and to have violated TSSAA's Constitution when its wrestling coach participated in a scheme to permit two McCallie wrestlers to participate in the Georgia State Wrestling Tournament. Although the coach's plans were never carried to fruition, TSSAA sanctioned McCallie as follows: (1) McCallie's wrestling team was not permitted to compete at all during the 1995-1996 school year and cannot participate in tournaments in the 1996-1997 school year; (2) all McCallie sports teams were barred from tournaments in the 1995-1996 school year; and (3) McCallie's entire athletic program is on probation for the 1995-1996 and 1996-1997 school years
 
 
 [6]
 Petitioners Graham, Hagaman and Lindsey graduated from the McCallie School in 1995, and Westfield graduated in 1996
 
 
 [7]
 It should be noted that these sanctions, as described in the district court's grant of summary judgment for defendant, were imposed by TSSAA for two violations distinct from the violation during the 1994-95 school year which is the subject of plaintiffs' challenge in this case
 McCallie was found to have been in violation of the "Quota Rule" in 1993-94. In addition, McCallie was found to have violated TSSAA's constitution. See n. 5, supra. Thus, even if Richards were to prevail on his challenge of the TSSAA violation during the 1994-95 school year, these two independent bases for sanctions would still preclude McCallie's wrestling team from post-season activity during the 1996-97 school year and bar his participation in post-season competition. As the district court noted: "This discipline resulted not only from TSSAA's finding that McCallie had violated the Quota Rule, but that McCallie had violated TSSAA's constitution as well." (District Court ruling, October 11, 1995, p. 5.)
 This Court's separate review of the sanctions imposed by the TSSAA reveals great emphasis was placed on the serious nature of McCallie's violation of the organization's constitution. In its letter imposing the sanctions, the TSSAA clearly elevated McCallie's violation of the constitution above the less serious violation of TSSAA's bylaws spelling out the Quota Rule.
 A violation of the [TSSAA] Constitution strikes at the heart of the purpose of athletics at our level and is the most serious of offenses.... for a coach to be involved and even have orchestrated [a plan to transfer students to a school in Georgia for one week to wrestle in a state tournament there] is unconscionable.... the actions that were planned would have been 'unethical' and contrary to the standards by which TSSAA member schools are expected to operate their athletic programs.
 (Letter to McCallie School from TSSAA's Ronnie Carter of June 2, 1995 imposing sanctions.) This language leaves no doubt that even if this Court were to overturn the Quota Rule, Richards would remain barred from competing during the 1996-97 school year because of the degree to which the TSSAA sought to punish McCallie for violating the organization's constitution.
 
 
 [8]
 In the event McCallie successfully completes its probationary period and Richards' wrestling record suggests that he can meet the requirements of standing in the future, Richards then has the option of seeking judicial review
 
 
 [9]
 Alternatively, even if Richards were deemed to have standing to challenge McCallie's dismissal, we would hold that the district court's dismissal of McCallie was proper. Plaintiffs challenge federal jurisdiction, contending removal by defendant TSSAA was improper because defendant McCallie had not consented thereto as required by 28 U.S.C. § 1446. If plaintiffs were correct, they could argue the district court lacked jurisdiction to proceed with the case and the complaint would be properly remanded, as originally pled, to the state court. However, procedural defects in removal are not jurisdictional. 1A Moore's Federal Practice and Procedure. p 0.168[3.-5-7] (1996 ed.). As removal here was based on federal question jurisdiction, there is little doubt the district court would have had original jurisdiction if plaintiffs had chosen to file this case in federal court. We therefore conclude even if removal was technically improper, the defect was not fatal to the district court's jurisdiction and the court's decision, therefore, cannot be challenged on this basis on appeal